**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JEANNIE CLARK, AMANDA CONGLETON and TOM ELLIS, individually and on behalf of all others similarly situated, | Civil Action No. 2:24-cv-00424 |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| APPALACHIAN POWER COMPANY, | **JURY DEMAND** |
| AMERICAN ELECTRIC POWER COMPANY, INC., | |
| and | |
| HOMESERVE USA REPAIR MANAGEMENT CORP., | |
| Defendants. | |

Plaintiffs Jeannie Clark, Amanda Congleton and Tom Ellis, by and through counsel, bring this Class Action Complaint against Defendants Appalachian Power Company, American Electric Power Company, Inc., and Homeserve USA Repair Management Corp., and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this civil action individually and on behalf of those similarly situated against Defendants Appalachian Power Company ("APC"), American Electric Power Company, Inc. ("AEP") and Homeserve USA Repair Management Corp. ("Homeserve") (together, "Defendants") arising from Defendants' unlawful and deceptive actions towards residential electric utility customers in West Virginia and concerning sham "exterior electrical line coverage" subscription service plans.

1

2.      In short, Defendants have collaborated to promote illusory "exterior electrical line coverage" plans to thousands of West Virginians, abusing the trusted position of electric utility providers APC and AEP, including their retention of customers' personal information, to promote these sham plans that are ostensibly for the maintenance and servicing of exterior electrical lines, notwithstanding that the "service" is already covered by customers' electric bill.

3.      As Defendants know, electrical utility providers (including Defendants APC and AEP) are responsible for ongoing maintenance of their electrical lines and facilities.

4.      Yet, Defendants coordinate to send residential electricity consumers (*i.e.* households) *numerous*, *unsolicited* mailers that begin by falsely conveying to customers that maintenance of electric lines is their obligation and follow with scare tactics about future, catastrophic electric line repairs, claiming that damage from such incidents will fall on the customer's shoulders.

5.      To induce consumers to enroll in their junk "protection" plans, Defendants make these grossly misleading (and even false) representations to electricity customers, while failing to disclose that electric utility providers are, in fact, responsible for line maintenance.

6.      APC and AEP betray their customers' trust by disclosing their private and confidential information to facilitate these junk solicitations mailed out by any of the named Defendants.

7.      The promotion and sale of these sham exterior electrical line coverage plans serve Defendants' interests in reducing APC's and AEP's obligations to maintain their service lines and raking in revenue from sales of the plans, from which all Defendants receive a cut.

8.      Defendants employ this ruse—selling plans that are effectively worthless to electricity customers, who are already *paying* for the service and maintenance of lines through their electricity rates—to generate millions of dollars in revenue for themselves.

9.      Plaintiffs—current or former West Virginia customers of APC and/or AEP who have been subjected to these unlawful, misleading practices—bring this action against Defendants as unlawful under West Virginia common law and in violation of the West Virginia Unfair Trade Practices Act, § 33-11-4, *et seq.*, and in violation of the West Virginia Consumer Credit and Protection Act, seeking damages and equitable relief, as described herein.

## PARTIES

10.      Plaintiff Jeannie Clark is a customer of Appalachian Power Company ("APC") and/or American Electric Power Company ("AEP"). She resides in Kanawha County, West Virginia.

11.      Plaintiff Amanda Congleton is a customer of APC and/or AEP. She resides in Wayne County, West Virginia.

12.      Plaintiff Tom Ellis is a customer of APC and/or AEP. He resides in Cabell County, West Virginia.

13.      Defendant Appalachian Power Company is an electric utility headquartered in Charleston, West Virginia, Kanawha County.[1] Thus, APC is home in this District and the Court's exercise of jurisdiction over it is proper.

14.      Defendant American Electric Power Company is an electric energy company headquartered in Columbus, Ohio. Jurisdiction over AEP is proper under W. Va. Code § 56-3-

---

[1] *About Appalachian Power*, Appalachian Power, https://www.appalachianpower.com/company/about/ (accessed on June 14, 2024).

33(a)(1) because AEP "[t]ransact[s] [ ] business in this state," and under § 56-3-33(a)(2), because AEP has "[c]ontract[ed] to supply services or things in this state."

15.    Moreover, AEP directed APC's actions within this District including, but not limited to, how customer information is shared with third-parties and the formation of the business partnership with Homeserve. Thus it has purposefully availed itself of the privilege of conducting activities in this District, and this matter arises out of AEP's activities in the forum.

16.    Defendant Homeserve USA Repair Management Corp. ("Homeserve") holds itself out as a "repair service plan company."[2] It is headquartered in Norwalk, Connecticut. Jurisdiction over Homeserve is proper under W. Va. Code § 56-3-33(a)(1) because Homeserve "[t]ransact[s] [ ] business in this state" and under § 56-3-33(a)(2), because Homeserve has "[c]ontract[ed] to supply services or things in this state."

17.    Further, Homeserve has mailed thousands of solicitations within this District, purporting to offer coverage within this District relating to homes and electrical powerlines in this District. Thus it has purposefully availed itself of the privilege of conducting activities in the District and this matter arises out of Homeserve's activities in the forum.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this matter pursuant to W. Va. Code § 51-2-2(b), because the amount in controversy exceeds $7,500.00, and under § 51-2-2(d), because Plaintiffs seek injunctive and/or declaratory relief, in addition to damages.

19.    Venue is likewise proper in this county pursuant to W. Va. Code § 56-1-1(a)(1) because Defendant APC resides in this county, and Plaintiffs' cause of action arose in this county.

---

[2] *Who We Are*, Homeserve, https://www.homeserve.com/en-us/about-us/ (accessed on June 14, 2024).

Venue is likewise proper in this county under § 56-1-1(a)(2), as all Defendants do business in this County.

## **BACKGROUND FACTS**

**A. Defendants' deceptive promotion and sale of sham "exterior electrical line coverage" plans to APC and AEP customers**

20.     As providers of electricity to West Virgina customers' homes, Defendants APC and AEP maintain a unique position of power and trust with respect to those customers.

21.     This position held by APC and AEP over customers like Plaintiffs includes retention of extensive personally identifiable information ("PII") regarding their customers, information that includes but is not limited to: home address, email, phone number, bank account and/or credit card information, as well as information relating to customers' electricity usage and service needs.

22.     The trust imbued by customers upon APC and AEP, because of their unique position as utility and electricity providers, naturally extends to communications and correspondence received from APC and AEP by their customers.

23.     And while electricity rates charged to APC and AEP customers incorporate *both* the expense of generating electricity *and* maintenance expenses for the utility's transmission facilities, APC and AEP have contracted with Defendant Homeserve to mail letters to customers promoting the exterior electric line coverage plans, ostensibly to cover repair or maintenance on exterior lines that, in fact, APC and AEP are themselves required to repair and maintain.

24.     The solicitation letters themselves are rife with deception. The front of the solicitations prominently bears the utility provider's name and logo, while failing to apprise customers that it is a solicitation and does not pertain to regulated electrical service.

25.     Despite the utility providers' obligation for ongoing maintenance of electrical lines and facilities, Defendants falsely and deceptively state in the solicitation letters that the electrical service provider is not responsible for maintenance and repair of those lines and facilities.

26.     The letters then engage in scare tactics, detailing a parade-of-horribles: potential future problems with exterior electrical service lines which, according to Defendants, are consumers' responsibility to maintain and repair.

27.     For example, one version of the letter sent by Homeserve to APC customers—bearing the APC logo—states, in the first line: "You are receiving this letter to let you know of your financial responsibility for breakdowns to the exterior electrical wiring on your property." It further states that such potential, future breakdowns "may result in hundreds of dollars in personal expenses."

28.     Building on the deceptive premise that consumers are responsible for maintaining and repairing external electric lines, the letters promote the exterior electrical protection plan as a way to mitigate against such future repair obligations—obligations that do not, in fact, exist.

29.     Defendants further misrepresent what the exterior electrical line coverage plan provides. For example, one version of the mailer states that the plan can be used "to repair or replace the broken, failed or hazardous permanent high voltage overhead or underground wiring [and] frayed high voltage wiring that is still functional, and broken, failed. . . ."

30.     Defendants make representations like this, about high-voltage lines, despite their knowledge that no single-family residence is serviced through high-voltage lines.

31.     Under no circumstance could a residential customer ever be responsible for the repair of "high voltage" power lines.

32.     Even more basically, Defendants know that it is the utility (and not the residential consumer) who is responsible for the service line maintenance.

33.     An express term of the electrical service provided by APC, and AEP, to its residential customers provides: APC "shall provide and maintain the **necessary line or service connections**, transformers (when same are required by conditions of contract between the parties thereto), meters and other apparatus, which may be required for the proper measurement of and protection to its service. All such apparatus shall be and remain the property of [APC]." [3]

34.     Moreover, "service connection," also known as a "service delivery point," is defined to be the "physical junction between the Company owned and Applicant owned facilities."

35.     Even in the section of the Terms & Conditions of the electric service (as opposed to the solicitations) describing "Customer's Liability," the lines are described as "the Company's property" (the "Company" defined as "Appalachian Power Company d/b/a American Electric Power").[4] And customers are only held responsible for "misuse" and "interference" with such property—not service line repairs.[5]

36.     Thus, to the detriment of West Virginia consumers, Defendants' solicitations are littered with grossly misleading—even false—representations.

37.     If a consumer responds to Defendants' solicitation and enrolls in Defendants' coverage plan, the plan is billed monthly as part of the consumer's regular electric bill and renews automatically unless and until the consumer cancels.

---

[3] Appalachian Power Company, *et al.*, *Rate Schedules Terms and Conditions of Service* (Mar. 6, 2019), at p. 3-5, https://www.appalachianpower.com/lib/docs/ratesandtariffs/WestVirginia/SiteReadinessTariffSheetsEff6-1-24.pdf (emphasis added).
[4] *Id.* at pp. 3-5 and 3-13.
[5] *Id.* at p. 3-5.

7

38.     Once enrolled, most subscribers maintain their coverage, believing that it provides meaningful protection against expensive exterior electrical line maintenance costs the customer would otherwise be responsible to cover.

39.     Because the overwhelming majority of subscribers to Defendants' exterior electric line coverage plans never have occasion to lodge a claim for services under their plan (itself a strong indication of how meaningless the coverage is), very few subscribers ever learn of the exceedingly hollow nature of the coverage and Defendants' misrepresentations regarding the same.

40.     The letters have not been endorsed or approved by the Public Service Commission of West Virginia ("PSC"), nor do they limit the utility's maintenance obligations.

41.     The letters and their content are not regulated by the PSC.

**B.  Partnership between Defendants APC, AEP, and Homeserve**

42.     Defendant Homeserve "partners" with municipalities and utilities across the country to offer service protection plans to the municipalities' and utilities' customers.

43.     In or around 2014, AEP—one of the largest electric utilities in the United States—entered into an "agreement" with Homeserve whereby AEP's customers and customers of AEP's subsidiaries, including APC, would be "offered" the opportunity to enroll in the "Exterior Electric Line" home warranty service plan from Homeserve.[6]

44.     Eric Morris, former Customer Programs Manager for AEP, stated AEP was intentionally looking to develop a "warranty program" with "warranty products" to offer its

---

[6] *American Electric Power to Offer Emergency Repair Service Plans to Ohio Homeowners*, Electrical Construction & Maintenance, June 27, 2014, https://www.ecmweb.com/news/article/20898970/american-electric-power-to-offer-emergency-repair-service-plans-to-ohio-homeowners.

customers.[7]

45.    Although AEP allegedly inquired into home warranty companies other than Homeserve, Mr. Morris stated that Homeserve was the best opportunity for AEP. Mr. Morris stated that AEP has had a "very good partnership" with Homeserve.

46.    As part of the 2014 Agreement with AEP, Homeserve anticipated offering "service plans to 3.7 million households located in AEP territories across eleven states"—including within APC's service territory.[8]

47.    In 2015, Homeserve "partnered" with APC directly, executing a Master Service Agreement where APC and AEP agree to provide Homeserve with customer names and addresses; APC and AEP authorize Homeserve to use their "marks" to "market and administer the warranty programs," subject to prior approval by AEP; AEP agrees to put a link to Homeserve on its website (indeed, both AEP and APC have such links); APC and AEP bill customers for the warranty plan and process plan payments for Homeserve; and AEP and APC receive a commission from Homeserve.[9]

48.    Upon information and belief, AEP directed or required APC's partnership with Homeserve.  Put differently, AEP decided that APC customers would receive Defendants' exterior electrical service plan solicitations.

---

[7] *HomeServe USA Partner Testimonial - Eric Morris, Customer Programs Manager, American Electric Power*, May 2017, https://vimeo.com/289269683.

[8] *HomeServe Chosen by American Electric Power to Offer Emergency Repair Service Plans to Ohio Homeowners*, Business Wire, May 20, 2014, https://www.businesswire.com/news/home/20140520006544/en/HomeServe-Chosen-by-American-Electric-Power-to-Offer-Emergency-Repair-Service-Plans-to-Ohio-Homeowners.

[9] Public Service Commission of West Virginia, Commission Order (Sep. 16, 2015), http://www.psc.state.wv.us/scripts/orders/ViewDocument.cfm?CaseActivityID=434322&Source=Docket.

49.     Under the Master Services Agreement, AEP approves any solicitations drafted and sent to its customers by Homeserve.

50.     Homeserve has entered into such an arrangement with AEP and APC to promote and sell these warranty service programs to the utilities' customers.

51.     At the inception of each new "partnership," Homeserve pays the respective utility a lump sum fee to gain access to their customer lists and related records—and the utility is obligated to maintain and update the customer information for Homeserve.

52.     Once provided the customer information by the utility, Homeserve mails the customers solicitation letters (letters which are approved by APC and AEP) seeking their enrollment in the protection plan(s).

53.     Those solicitations prominently bear the utility's name and logo, lending an additional level of trust to the communications, given the ongoing (and practically unavoidable) relationship between the customer and electricity provider.

54.     And while Defendants APC and AEP might *now* inform their customers that their PII might be disclosed to third parties—for years, APC and AEP told customers that they would only share PII if they had explicit consent from the customer.

55.     Indeed, this arrangement between Defendants was made in 2015, and upon information and belief, only within the last year did APC and AEP (unilaterally) amend their Privacy Notice to inform consumers of the information-sharing.[10]

56.     Customers who enroll in Homeserve's protection plans are billed directly through their monthly utility statements from the utility, which charges their customers for exterior

---

[10] *See Privacy Policy*, AEP, https://www.aep.com/privacy (accessed on June 19, 2024). *See also* https://www.appalachianpower.com (linking to AEP's privacy policy).

electrical line protection plan.

57.    As described by Defendant APC, "The home protection plans are sold and administered by HomeServe. We provide a convenient billing solution for customers who want to make this optional purchase from HomeServe."[11]

58.    The utility provider contracts with Homeserve to retain a percentage of the premiums paid by customers who enroll in the plan, and then it remits the remainder to Homeserve. As stated by APC to regulators (but not to consumers), the electric utility "receives a commission for each plan sold."[12]

59.    Homeserve and electrical utilities including APC and AEP have made—and continue to make—huge sums from their misrepresentations due to the plan's automatic renewal and the large number of West Virginians who have fallen for Defendants' trap.

60.    Homeserve "partners" with both public and for-profit entities throughout the United States not only for exterior electrical line coverage, but also with other utilities for, *e.g.*, water, gas, or sewer line protection plans.

61.    For instance, Homeserve "partnered" with the City of Memphis for residential water line protection coverage plans.  As reported by local Memphis news, residents received mail solicitations with the City's name and seal imprinted, but the mailings were from Homeserve, who paid the City $100,000 at the start of the partnership.  Homeserve purportedly purchased customer information from a third party but, as part of the agreement, "the City agreed to help HomeServe

---

[11] https://www.appalachianpower.com/account/bills/programs/working-with-homeserve (accessed on June 17, 2024).

[12] *Id.*

update its customer list."  The partnership allowed the city to retain 12% of sales.[13]

62.    Similarly, as part of Louisville Water Company's partnership with Homeserve, it was Homeserve which sent solicitations for the plans utilizing the utility's logo, but "the utility facilitate[d] the promotion, sale and marketing of these warranties," receiving a 15% commission.[14]

63.    As part of its partnership with Homeserve, the Washington Suburban Sanitary Commission shared "customers' names, addresses and account numbers" with Homeserve to be used in mail solicitations to its customers.  The solicitations—sent by Homeserve—bore the utility's logo.[15]

64.    Homeserve's partnership with Piedmont Natural Gas drew intense scrutiny from the Attorney General's office as part of Tennessee Public Utility Commission proceedings where it was revealed that Piedmont (as the regulated entity) provided personal customer information to Homeserve to solicit its customers' enrollment in the protection plans.  As stated by the Consumer Advocate Unit within the Attorney General's office, "the first step in the process of generating the revenue stream [from the partnership] involves Piedmont's sharing of personal information of its customer base that is has obtained via its status as a government-sanctioned monopoly.  Essentially, Piedmont is monetizing personal customer information for private gain."  Piedmont admitted to

---

[13] *Memphis questioned about HomeServe partnership*, WMC-TV, January 10, 2019, https://www.actionnews5.com/2019/01/11/memphis-questioned-about-homeserve-partnership/ (last accessed June 17, 2024).

[14] *Insurance Offer Has Louisville Water Company's Logo, But a Private Company Is Behind It*, Louisville Public Media, August 28, 2014 https://www.lpm.org/investigate/2014-08-28/insurance-offer-has-louisville-water-companys-logo-but-a-private-company-is-behind-it.

[15] *Maryland water utility partners with company accused of misleading customers*, September 10, 2016 https://www.washingtonpost.com/local/maryland-water-utility-partners-with-company-accused-of-misleading-customers/2016/09/10/2ef4777c-705e-11e6-8365-b19e428a975e_story.html.

providing Homeserve with its customers' "name, secondary name, mailing address, city, state, mailing zip, service address and phone number."  Notably, Tennessee did not have any express prohibition against a utility providing customer information to third parties, causing the Consumer Advocate to suggest such protection be added to address the monetization of such information.[16]

65.    In Spring of 2018, the Utah Division of Public Utilities issued a consumer alert regarding "misleading mailers offering insurances services on gas company letterhead" – solicitations which were sent as part of Dominion Energy's agreement with Homeserve.[17] Homeserve bristled at the concerns, undertaking a PR campaign in response, arguing "a misleading consumer alert and a handful of concerns [were turned] into sensationalized pieces against HomeServe" and encouraging consumers to check out "more objective coverage of the partnership."[18]  That fall, Utah ordered an end to mail solicitations arising as part of Dominion Energy's agreement with Homeserve and, recognizing the solicitations stemmed from the utility company sharing customer information with a third-party not associated with the regulated activity, the state would be requiring "Dominion Energy to credit customers with the value of customer information and access, to be determined in a future proceeding."[19]

---

[16] *In Re: Piedmont Natural Gas Company Rate Making, Docket No. 20-00086, Tennessee Public Utility Commission*, Public Direct Testimony of David N. Dittemore, November 30, 2020 https://psc.ky.gov/pscecf/2022-00432/rateintervention%40ky.gov/07312023014121/230731_AG_DR_Responses_to_BG_Part_3.pdf.

[17] *Dominion Energy halts Utah marketing campaign for Homeserve insurance*, May 2, 2018; https://www.sltrib.com/news/business/2018/05/02/dominion-energy-halts-utah-marketing-campaign-for-homeserve-insurance/.

[18] *Dominion Energy Utah Customers Are Owed the Full Story*, May 4, 2018 https://www.homeserve.com/media/dominion-energy-utah-customers-are-owed-the-full-story.

[19] *State orders Dominion Energy to cease mailing third party service offers to customers*, October 5, 2018 https://commerce.utah.gov/2018/10/05/state-orders-dominion-energy-to-cease-mailing-third-party-service-offers-to-customers/.

66.     In 2014, Homeserve entered into an agreement with Kansas-based Westar Energy to provide electrical line protection plans to Westar customers.  The Agreement allowed Homeserve to obtain Westar customer data to be used within the solicitations and – further – allowed Homeserve to utilize Westar's logo in the solicitations.  The Kansas Attorney General commenced investigation and enforcement actions regarding the partnership.  In 2022, Evergy (Westar's successor) agreed to pay $500k to the state to end the matter – having already terminated the partnership with Homeserve.  According to the Kansas Attorney General, through that partnership, Westar "sponsored and approved electrical home warranties that failed to provide a material benefit to consumers and made material misrepresentations in violation of the Kansas Consumer Protection Act."  Evergy was required to disclose that it was paid for use of its logo and its logo could no longer be used in solicitations by third parties when such use would cause someone to believe the solicitation was coming from Evergy.[20]  Homeserve entered into a consent judgment in 2023 for its role in the partnership, requiring Homeserve to pay both a civil penalty and restitution.[21]

67.     Despite many other states taking actions against Homeserve and its "partnered" utility companies, it appears nothing has been done to address these deceptive practices in West

---

[20] *Evergy pays $500k to settle consumer protection investigation into worthless warranties*, Kansas Reflector, July 20, 2022 https://kansasreflector.com/briefs/evergy-pays-500k-to-settle-consumer-protection-investigation-into-worthless-warranties/; *see* Faegre Drinker's August 8, 2022 State AG Updates, https://www.faegredrinker.com/en/insights/publications/2022/8/state-ag-updates-new-york-washington-state-ohio-pennsylvania-kansas-iowa-and-wisconsin.

[21] *State of Kansas v. Homeserve, USA*, Sedgwick County Case No. 2023-CV-35-OT, Journal Entry of Consent Judgment, January 6, 2023, https://ag.ks.gov/docs/default-source/consumer-judgments/2023/2023-cv-000035-ot.pdf?sfvrsn=eda2a21a_6htmlfile%5CShell%5COpen%5CCommand; *see* Faegre Drinker's February 9, 2023 State AG Updates, *https://www.faegredrinker.com/en/insights/publications/2023/2/state-ag-updates-colorado-new-jersey-new-york-kansas-florida-rhode-island-and-ag-coalitions*.

Virginia.

68.     West Virginia utilities including Defendant APC and its parent company Defendant AEP understand the sham of Homeserve's exterior electrical line protection plan because APC and AEP are fully aware of their responsibility to maintain the exterior electrical lines to the point of delivery to their consumers.

69.     Put simply, APC and AEP are promoting and selling plans to their customers for a service that is *already covered* under the regulated electricity rates.

70.     Legal staff at the West Virginia PSC noted that "the Homeserve programs do not offer benefits to AEP customers."[22]

71.     Of course, APC and AEP promote Homeserve's protection plan because they have a financial incentive to do so: 1) the utilities are paid every time a customer enrolls in the plan; and/or 2) maintenance responsibilities properly resting with the utility *may* be "covered" by the protection plans.

72.     So, Defendants reap financial benefit on the backs of APC and AEP customers who have been told (by their utility provider) that they need a plan for services that they are already paying for.

## C. Residential electricity customers of Defendants APC and AEP

73.     Defendants AEP and APC provide electric utility services in West Virginia. As stated by AEP, "[i]n *our* West Virginia service territory," individuals and businesses "fulfill their

---

[22] Public Service Commission of West Virginia, Commission Order (Sep. 16, 2015), http://www.psc.state.wv.us/scripts/orders/ViewDocument.cfm?CaseActivityID=434322&Source=Docket.

power needs through *our* operating company, Appalachian Power."[23]

74.    And West Virginia residents are, for better or worse, not afforded choice as to where—or from whom—they get their electricity from the grid but instead can only tie into the electric grid through the sole electricity provider in their region.

75.    Some West Virginians, like Plaintiffs, reside in areas serviced only by Defendants AEP and/or APC, as opposed to service areas where there is a choice between the services provided by AEP and/or APC and those provided by a third-party electric utility provider.

76.    Because of the arrangement between Homeserve, APC and AEP, residential electricity customers are compelled to wade through untold numbers of these junk solicitations—and to assess Defendants' deceptive representations about customers' "obligations" with regard to electric lines and further deceptions about future costs associated with those purported obligations.

77.    Plaintiff Jeannie Clark is a customer of APC and/or AEP and has been a customer for several years. During that time, she has received several of Defendants' solicitation letters promoting the exterior electric line coverage plan (the "Plan").

78.    Plaintiff Clark is a subscriber to the Plan, and has been a subscriber for years, during which time she has paid monthly premiums to Defendants for the Plan.

79.    Plaintiff Tom Ellis is a customer of APC and AEP and has been a customer for approximately 20 years. During that time, he has received several of Defendants' solicitation letters promoting the Plan.

80.    Plaintiff Amanda Congleton has been a customer of APC and AEP for decades. During that time, she has received several of Defendants' solicitation letters promoting the Plan.

---

[23] *West Virginia Economic Development*, American Electric Power, https://www.aep.com/economic-development/regions/west-virginia (accessed on October 8, 2024) (emphasis added).

81.    For over a year, Plaintiff Congleton was a subscriber to the Plan and paid monthly premiums to Defendants for the Plan.

82.    West Virginia consumers, including Plaintiffs, have suffered injury and damages in the following ways:

   a.   Having their protected personal information disclosed by their utility providers, APC and AEP, to Homeserve—and potentially further—and used to further Defendants' deceptive promotion and sale of the exterior electrical line coverage Plan;

   b.   Being subjected to numerous deceptive solicitations through receipt of false and misleading mailings about the sham plans;

   c.   Excessive time spent assessing Defendants' misleading and false representations about customers' obligations with regard to the maintenance and servicing of electric lines;

   d.   Excessive time spent assessing Defendants' further misleading and false representations about its sham Plan;

   e.   For those who enroll in the Plan, monthly payments for a plan consumers are induced to purchase by deceptive (even false) representations about a sham product that is not of the nature, quality, character or value it was represented to be; and

   f.   Uncertainty that their utility provider will make the necessary repairs to its service line to the consumer's home, should the need arise, as required by the PSC.

83.    Based upon Defendants' ongoing conduct, West Virgina consumers, including Plaintiffs, will continue to be subjected to Defendants' unlawful conduct absent judicial intervention.

## CLASS ALLEGATIONS

84.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth below.

85.    Plaintiffs brings this action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, on behalf of the following proposed Classes:

*Receipt Class*: All West Virginia citizens who were residential electrical customers during the applicable statute of limitations, and received an exterior electrical line coverage solicitation from Defendants.

*Information Class*: All West Virginia citizens who were residential electrical customers who during the applicable statute of limitations, and who had their personal information disclosed or utilized without consent or authorization as part of Defendants' exterior electrical line partnership agreement.

*Enrollment Class*: All West Virginia citizens who were residential electrical customers during the applicable statute of limitations, and who enrolled in Defendants' exterior electrical line coverage plan.

86.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before the Court determines whether class certification is appropriate.

87.    Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

88.    This action is properly maintainable as a class action under W.Va. R. Civ. P. 23.

89.    **Numerosity.** The members of the Classes are so numerous and geographically dispersed throughout West Virginia that joinder of all members is impracticable within the meaning of Rule 23(a)(1). While the exact number of members can be determined only by appropriate discovery, upon information and belief, the Classes include, at minimum, thousands of members. The disposition of claims of Class members in a single action will provide substantial benefits to all parties and the Court.

90.    **Commonality and Predominance:** Plaintiffs' claims raise questions of law and fact that are common to all putative Class members within the meaning of Rule 23(a)(2), and those

questions substantially predominate over questions that may affect individual members, as required by Rule 23(b)(3). Common questions of law and fact include but are not limited to:

      a. The nature and terms of Homeserve's "partnership" with electricity providers APC and AEP to market exterior electrical line coverage plans to the utility providers' customers;

      b. Whether Defendants APC and/or AEP violated West Virginia laws, rules or regulations in "partnering" with Homeserve;

      c. Whether Defendants' exterior electrical line coverage plan solicitations were false, deceptive, or misleading;

      d. Whether Defendants acted intentionally or knowingly in developing their solicitations and coverage terms;

      e. Whether Defendants APC and/or AEP violated West Virginia law, regulation, or rule in sharing their customer information with third-parties or affiliates, including Homeserve;

      f. Whether Defendants APC and/or AEP breached contractual obligations to their consumers in sharing or selling customer information without customer consent;

      g. Whether Defendants were unjustly enriched through their "partnership" arrangement;

      h. Whether Defendants were unjustly enriched through sale of exterior electrical line coverage plans;

      i. Whether Defendants were unjustly enriched by disclosure and use of residential utility customers' PII;

      j. The proper method or methods by which to measure damages or penalties for members of the respective Classes; and

      k. The declaratory and injunctive relief to which the Classes are entitled.

91.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and members of the Classes received the same—or substantially the same—form letters from Defendants and have been similarly affected by Defendants' deceptive actions.

92.    *Adequacy of Representation*: Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  There is no hostility of interest between Plaintiffs and the

unnamed class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

93. *Superiority of Class Action*: Plaintiffs and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, in light of the numerosity of substantively similar claims between Plaintiffs and members and the expense burden on individual litigants. Even if each class member had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows for unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of class members.

94. Accordingly, certification of the Classes is warranted under Rule 23(b)(3).

95. *Action Generally Applicable to Classes as a Whole*: Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole per Rule 23(b)(2).

## COUNT I
### Negligence
### (*On behalf of Plaintiffs and the Classes*)

96.     Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth below.

97.     Plaintiffs and members of the Classes have a right to have their personal information protected by their utility provider and to have their private and confidential information not be provided as a lead to the utility's affiliates.

98.     West Virginia utility providers, including Defendants APC and AEP, owed a duty to Plaintiffs and members of the Classes to protect the privacy and confidentiality of their information and not to unilaterally provide such information as leads to the utility's affiliates.

99.     At the urging of Homeserve, APC and AEP breached their duty to maintain the privacy and confidentiality of their customer information and did so at the expense of their customers and for monetary gain.

100.    Further, in their communications to residential electric customers, Defendants had a duty to act with reasonable care in the representations made about customers' alleged obligations regarding exterior electric line maintenance and repair.

101.    By inundating Plaintiffs and members of the Classes with their deceptive exterior electrical line coverage solicitations—under the name and logo of the utility provider—Defendants violated their duty to Plaintiffs and putative members.

102.    Indeed, Defendants APC and AEP owe a duty to their customers, who rely on the special relationship of trust between residential electric customers and their utilities.

103.    And APC and AEP breached their duty to their customers when, despite their knowledge of West Virginia electric utilities' obligations to maintain and repair electric lines, they misrepresented to customers that line maintenance and repair was a cost and obligation for the customer, not the utility.

104.    Moreover, Defendant Homeserve invokes and capitalizes on this special relationship between the utilities and their customers by contracting and partnering with APC and AEP to receiving their customers' information, using the utilities' logos on its misleading mailings to those very same customers, and making deceptive representations about the dangers and vulnerabilities of customers' exterior electric lines, representations that are imbued with the trusted logo and name of the Defendant utilities.

105.    As a result of Defendants' negligence, members of the Enrollment Class, like Plaintiffs Clark and Congleton, have enrolled in Defendants' exterior electrical line coverage plan, and suffered injuries from purchasing a plan that is not of the nature, quality, character or value it was represented to be, and for which members effectively received no benefit.

106.    All Plaintiffs and members of the Classes have been and continue to be subjected to Defendants' deceptive consumer transactions—sometimes multiple solicitations in a month—and are forced to expend time and consideration sorting through these correspondences to ascertain which mailings from their utility provider legitimately relate to electrical service.

107.    All members of the Classes have had their PII improperly shared or sold by their utility provider, itself a compensable harm.

108.    Further, Defendants' negligent and deceptive solicitations caused some West Virginians residents to lose money and others to lose time.  All are harmed as a result.

109.     As such, Defendants are liable to Plaintiffs and members of the Classes for damages, and other relief, as determined by the fact finder.

**COUNT II**
**Civil Conspiracy**
**(*On behalf of Plaintiffs and the Classes*)**

110.     Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

111.     Defendants engaged in a common plan to unlawfully deceive, mislead, defraud, and take advantage of the residential customers of West Virginia utility companies, including customers of Defendants APC and/or AEP.

112.     Defendants engaged in a common plan to unlawfully disclose, obtain, and misuse private and confidential customer information.

113.     Defendants each knew that the respective utility's customers' information was confidential—by contract, statute, and/or regulation—yet Defendants worked in concert to break this confidence in order to effectuate their shared junk solicitation scheme.

114.     Defendants each knew that, if successful, the exterior electrical line coverage plan solicitations would deceive and mislead West Virginia consumers, to Defendants' financial gain.

115.     And each Defendant provided substantial assistance to effectuate the unlawful scheme and received individual financial benefit therefrom.

116.     Defendants APC, AEP, and Homeserve are each individually liable to members of the Classes as a result of their civil conspiracy for damages and other available relief, as determined by the fact finder.

## COUNT III
### Tortious Interference
### (*On behalf of Plaintiffs and the Classes against Defendant Homeserve*)

117.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

118.    Plaintiffs and members of the Classes have had an ongoing contractual relationship, or expectancy, with their respective utility provider(s), including Defendants APC and/or AEP.

119.    Plaintiffs and members of the Classes did not consent to Defendants APC and/or AEP sharing their personal information with Defendant Homeserve but, rather, as a term of their customer-provider relationship, or expectancy, were entitled to have the utility, including Defendants APC and/or AEP, safeguard that information.

120.    Further, as part of their residential electrical service contract, or expectancy, with their utility provider, Plaintiffs and members of the Classes are entitled to have their utility company, including Defendants APC and/or AEP, maintain and repair any exterior electric lines, including high-voltage power lines, that service their home.

121.    By engaging Defendants APC and AEP in a separate contractual arrangement to share their utility customers' personal information, for purposes of offering an effectively worthless service already covered under Plaintiffs' electric service contract, Defendant Homeserve intentionally and knowingly interfered with the ongoing—and practically unavoidable—contractual, utility relationship, and//or expectancy, between Plaintiffs and members of the Classes and Defendants AEP and/or APC.

122.    Defendant Homeserve intentionally and knowingly interfered with—and subverted—the right of Plaintiffs and members of the Classes to have their personal customer information protected and not disclosed.

123.    Defendant Homeserve likewise intentionally and knowingly interfered with the right of Plaintiffs and members of the Classes to have any necessary repairs to the service lines feeding their home undertaken by Defendants APC and/or AEP.

124.    Defendant Homeserve's tortious interference enables it to misuse protected customer information to unlawfully market sham exterior electrical line coverage plans.

125.    Additionally, Defendant Homeserve's tortious interference enables it to unlawfully market needless exterior electrical line coverage, for line repairs that the customer has contracted with their utility to undertake if/when needed.

126.    As part of Defendant Homeserve's interference, Plaintiffs' and Class members' private and confidential information has been disclosed without consent, for Defendant Homeserve's improper gain.

127.    Plaintiffs and members of the Classes have been harmed by having their private and confidential information disclosed to Defendant Homeserve by their utility provider(s), for purposes of inundating Plaintiffs and members with Defendant Homeserve's unlawful and deceptive solicitations.

128.    Further Plaintiffs Clark and Congleton and members of the Enrollment Class have been harmed by their enrollment and payments for the sham exterior electric line coverage plans, notwithstanding that the maintenance and repair "services" allegedly covered by those plans are covered by their electricity rates.

129.    Defendant Homeserve is liable to Plaintiffs and members of the Classes for its intentional and unlawful interference with the members' contractual relationship, or expectancy, with their respective utility provider, for damages and other relief, as determined by the fact finder.

<u>**COUNT IV**</u>
**Breach of Contract**
(***On behalf of Plaintiffs and the Classes***)

130.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

131.    As part of the contractual arrangement to provide electricity to residences within Defendants APC's and AEP's exclusive coverage area, APC and AEP promised their customers, including Plaintiffs, that their private and confidential information would not be shared with third parties without Plaintiffs' and members' consent.

132.    APC and AEP customers, including but not limited to Plaintiffs, rely upon APC's and AEP's promise of protection and non-disclosure, and it is one of the benefits of the bargain for which members contracted.

133.    Like most APC and AEP customers, Plaintiffs never consented to APC or AEP sharing or selling their information to third-parties or affiliates, especially if such disclosure would be for APC's, AEP's, or the third-party's own gain.

134.    Any purported consent APC or AEP may claim from Plaintiffs would have only been attained through deceptive or fraudulent means so as to render it ineffective, and a breach by APC or AEP of the inherent duty of good faith and fair dealing.

135.    Contrary to APC's and AEP's promise to not share or sell customer information without explicit consent, they have done exactly that to further the promotion and sale of sham exterior electrical line coverage plans, in partnership with Homeserve.

136.    APC and AEP customers, including but not limited to Plaintiffs, had the contractual right to have their information protected by APC and AEP and not disclosed or sold.

137.    Defendants APC and AEP have breached this obligation, to Plaintiffs and members of the Classes.

138.    The impact of APC's and AEP's contractual breach is heightened because customer information which was improvidently disclosed by APC and/or AEP has been, and continues to be, used against APC and AEP customers to deceptively promote Defendants' sham exterior electrical line coverage plans.

139.    Defendants APC and AEP are thus liable for in damages to Plaintiffs and members of the Classes for their material breach of these contractual promises.

**COUNT V**
**Unjust Enrichment**
**(*On behalf of Plaintiffs and the Classes*)**

140.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

141.    Plaintiffs plead this claim for Unjust Enrichment in the alternative to other causes of action herein raised.

142.    Defendants AEP and APC promised their customers that the utility would not disclose the customer's information without the express consent of the customer.

143.    Defendants APC and AEP breached these promises and disclosed their customers' information to Defendant Homeserve without the consent of the customers.

144.    APC and AEP did so in order to facilitate their respective "partnership" with Defendant Homeserve.

145.     Defendants have been unjustly enriched by this improper disclosure of customer information.

146.     Upon information and belief, the unjust enrichment received by APC and AEP includes a lump-sum payment from Homeserve to APC and/or AEP as part of the "partnership" between Defendants.

147.     Upon information and belief, this unjust enrichment also includes periodic payments from Homeserve to Defendants APC and AEP for ongoing access to the utility's customer information.

148.     Upon information and belief, this unjust enrichment also includes monthly subscription fees for purchasing the plans—paid to AEP, APC, and Homeserve and facilitated by the improper disclosure of utility customers' private information.

149.     Defendants APC, AEP, and Homeserve have each appreciated these benefits in the form of substantial revenue that they otherwise would not have received but for the improper sharing of utility customers' private information.

150.     Defendants have accepted and retained such monetary benefit under inequitable and unjust circumstances.

151.     Defendants should not be allowed to profit or enrich themselves inequitably and unjustly by the improper sharing of customer information and should be required to make restitution to members of the Classes for the monies received as a result therefrom.

152.     Defendants should be disgorged of their wrongful profits as restitution to Plaintiffs and members of the Classes, who were harmed by Defendants' unlawful conduct.

<u>COUNT VI</u>
**Violation of the West Virginia Unfair Trade Practices Act, § 33-11-4, *et seq.***
**(*On behalf of Plaintiffs and the Classes*)**

153.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

154.    Defendants' representations and solicitations to Plaintiffs and members of the Classes about the sham exterior electric line coverage plans are "unfair methods of competition and unfair or deceptive acts or practices in the business," and thus in violation of the West Virginia Unfair Trade Practices Act ("WVUTPA"), § 33-11-4(1), *et seq.*

155.    Further, Defendants are liable under the WVUTPA for the unlawful, secret sharing of electric utility customers' information without customers' consent and for the purpose of mailing the deceptive solicitations.

156.    Defendants are all "persons," as defined under W. Va. Code Ann. § 33-11-2(a), and the exterior electric line coverage plans promoted and sold to Plaintiffs and the Classes are "insurance policies" or "insurance contracts," under § 33-11-2(c).

157.    Through their solicitations and enrollments, Defendants knowingly and intentionally engaged in deceptive representations that include, but are not limited to:

    a.    Use of Defendants APC's and/or AEP's names and logos to deceive electric utility customers to believe the solicitations of the exterior electric line coverage plans are mailings of another character (*e.g.*, mailings regarding their electricity service);

    b.    Deceptive or false representations about electric utility customers' obligations with regard to the maintenance, servicing, or repair of electric lines;

    c.    Deceptive or false representations about potential hazards resulting from electric lines, including statements regarding "high voltage" line hazards;

    d.    Deceptive or false representations about electric utility customers' financial responsibilities with regard to maintenance or repair of electric lines;

    e.    Deceptive or false representations about the nature, character, quality, or value of the exterior electric line coverage plans promoted and sold by Defendants;

    f.  Deceptively omitting that AEP and APC were paid, by Homeserve, for the customers' personal information;

    g.  Deceptively omitting that AEP and APC, as part of their partnership with Homeserve, are required to promote the exterior electrical line plans and, by doing so, fail to accurately and adequately disclose AEP's and APC's financial interests therein; and

    h.  Deceptively omitting that AEP and APC receive a commission for each of their customers who enrolls in the exterior electrical line plan.

158.    Defendants also deceptively omitted key information from their solicitations to electric utility customers regarding the exterior electric line coverage Plans, deceptive and misleading omissions that include, but are not limited to Defendants' deceptive failure to disclose to customers that West Virginia electric utilities, like APC and AEP, have a duty to maintain, service, and repair electric lines.

159.    And as to all Plaintiffs and members of the Classes, Defendants partnered and contracted to share electric utility customers' information without customers' consent and for the purpose of mailing solicitations that all Defendants knew were deceptive, even false.

160.    Thus, Defendants have committed "unfair methods of competition and unfair or deceptive acts or practices in the business," including but not limited to, by:

    a.  "Misrepresent[ing the benefits, advantages, conditions or terms of any insurance policy," § 33-11-4(1)(a); and

    b.  "Us[ing] any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof," *id.* at § 33-11-4(1)(e).

161.    Further, the solicitations sent by Defendants to Plaintiffs and members of the Classes unlawfully "make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated or placed before the public," in the form of "a notice, circular, pamphlet, letter or poster . . . , or in any other way, an

advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his or her insurance business, which is untrue, deceptive or misleading." *Id.* at § 33-11-4(2).

162.    Defendants knew their practices were deceptive, especially given that the utilities are closely regulated by the PSC and utility maintenance obligations are part-and-parcel of established electricity rates.  As such, Defendants were well aware that members of the Classes could be—and, likely, would be—tricked by the unfair, deceptive, and misleading nature of Defendants' solicitations.

163.    Defendants intended to deceive all members of the Classes and did—in fact—deceive members of the Enrollment Class

164.    Plaintiffs and members of the Classes are members of the class of persons for whose benefit the WVUTPA was enacted, because—as APC and AEP customers—they are subject to the information-sharing and dissemination of the misleading and false solicitations by Defendants. *See Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W. Va. 34, 38, 716 S.E.2d 696, 700 (2011) (citing *Morton v. Amos-Lee Sec., Inc.*, 195 W. Va. 691, 695, 466 S.E.2d 542, 546 (1995)).

165.    Plaintiffs and members of the Classes have incurred damages as a result of Defendants' violations of the WVUTPA, including but not limited to the time and effort spent by Plaintiffs in reviewing Defendants' correspondences to determine whether the letters contained important, accurate information about their electrical service and the veracity of representations regarding their obligations with regard to that service, as well as monies paid by Plaintiffs Clark and Congleton for the sham Plans they were induced to purchase, because of Defendants' misleading representations.

166.    The Plans received by those who enrolled, including Plaintiffs Clark and Congleton and Members of the Classes, are effectively worthless, since Defendants APC and AEP are responsible to maintain and service exterior electrical lines.

167.    Thus, Defendants are liable for these violations of the WVUTPA to Plaintiffs and members of the Classes for damages, and other relief, as determined by the fact finder.

168.    And because Defendants continue to work in concert to direct the deceptive solicitations to customers of APC and AEP in an ongoing effort to induce new subscribers to the Plans, injunctive or declaratory relief is warranted to put a stop to Defendants' unlawful deception of unwitting customers.

**COUNT VII**
**Violation of the West Virginia Consumer Credit and Protection Act,**
**W. Va. Code § 46A-6-104, *et seq.***
**(*On behalf of Plaintiffs Clark and Congleton and the Classes*)**

169.    Plaintiffs Clark and Congleton incorporate the preceding paragraphs of this Complaint as if fully set forth below.

170.    Defendants' representations and solicitations to Plaintiffs Clark and Congleton and members of the Classes were deceptive in form and function and in violation of the West Virginia Consumer Protection Act ("WVCCPA"), W. Va. Code § 46A-6-104, *et seq.*

171.    Through standardized, written and deceptive solicitations, Defendants intended to induce Plaintiffs Clark and Congleton and members of the Classes to subscribe to and pay for Defendant Homeserve's needless, unsolicited, and effectively meaningless exterior electrical line coverage plans.

172.    Through their solicitations, Defendants knowingly and intentionally engaged in deceptive representations that include, but are not limited to:

32

a. Use of Defendants APC's and/or AEP's names and logos to deceive electric utility customers to believe the solicitations of the exterior electric line coverage plans are mailings of another character (*e.g.*, mailings regarding their electricity service);

b. Deceptive or false representations about electric utility customers' obligations with regard to the maintenance, servicing, or repair of electric lines;

c. Deceptive or false representations about potential hazards resulting from electric lines, including statements regarding "high voltage" line hazards;

d. Deceptive or false representations about electric utility customers' financial responsibilities with regard to maintenance or repair of electric lines; and

e. Deceptive or false representations about the nature, quality, or value of the exterior electric line coverage plans promoted and sold by Defendants;

173. Defendants also deceptively omitted key information from their solicitations to electric utility customers regarding the exterior electric line coverage Plans, omissions that include, but are not limited to: Defendants' deceptive failure to disclose to customers that West Virginia electric utilities, like APC and AEP, have a duty to maintain, service, and repair electric lines; that Homeserve paid APC and AEP for their customers' personal information; and that APC and AEP contracted to earn a commission for each customer who enrolls in a Plan offered by Homeserve.

174. Defendants intended to deceive all members of the Classes and did, in fact, deceive members of the Classes.

175. Defendants, by doing so, "caus[ed] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services." W. Va. Code § 46A-6-102(7)(B).

176. Defendants likewise "caused likelihood of confusion or of misunderstanding as to affiliate, connection, association with or certification by another." W. Va. Code § 46A-6-102(7)(C).

177. Further, Defendants deceptively represented that goods and services have the approval or affiliation that they do not actually have. W. Va. Code § 46A-6-102(7)(E).

178.    Defendants utilized deceptive trade practices in their consumer transactions with all members of the Classes.

179.    Defendants utilized unfair trade practices in their consumer transactions with all members of the Classes.

180.    Defendants knew their practices were deceptive, especially given that the utilities are closely regulated by the PSC, and utility maintenance obligations are part-and-parcel of established electricity rates.  As such, Defendants were well aware that members of the Class could be—and, likely, would be—tricked by the unfair, deceptive, and misleading nature of Defendants' solicitations.

181.    Members of the Classes have incurred actual damages as a result of Defendants' violations of the WVCCPA.

182.    Members of the Classes were induced by Defendants' deceptions to purchase a policy for which they received no benefit.

183.    Defendants' deceptions to induce Plaintiffs Clark and Congleton to purchase a policy for which they received no benefit was the cause-in-fact and proximate cause of their harm.

184.    On July 25, 2024, pursuant to W. Va. Code § 46A-5-108(a), Plaintiffs Clark and Congleton sent separate letters by certified U.S. Postal mail, with requested return receipt, to Defendants APC, AEP, and Homeserve providing detailed notice of their violations of the WVCCPA (hereafter, "WVCCPA Notices").

185.    Plaintiffs Clark and Congleton received return receipts demonstrated that all Defendants received WVCCPA Notices on July 30, 2024.

186.    To date, Defendants APC, AEP, and Homeserve have not made a cure offer, *see* § 46A-5-108(a), to Plaintiff Clark or Plaintiff Congleton.

34

187.    Defendants APC, AEP, and Homeserve are liable for these violations of the WVCCPA for the greater of actual damages or $200 in statutory damages, and other relief, including necessary or proper equitable relief, as determined by the fact finder.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

a.  Certify this case as a class action, designating Plaintiffs as Class Representatives for the Classes and designating the undersigned as Class Counsel;

b.  Award Plaintiffs and members of the Classes actual or statutory damages in an amount according to proof;

c.  Award Plaintiffs and members of the Classes punitive damages in an amount according to proof;

d.  Award Plaintiffs and members of the Classes restitution in an amount to be proven at trial;

e.  Award Plaintiffs and members of the Classes pre-judgment interest in the amount permitted by law;

f.  Award Plaintiffs and members of the Classes exemplary damages in accordance with Defendants' willful misconduct;

g.  Disgorge Defendants of their ill-gotten monies and return such monies to Plaintiffs and members of the Classes;

h.  Levy a civil penalty upon Defendants for their unconscionable practices;

i.  Award Plaintiffs and the Classes attorneys' fees and costs as permitted by law;

j.  Declare Defendants' practices outlined herein to be unlawful;

k.   Enjoin Defendants from engaging in the practices outlined herein;

l.   Require Defendants to identify which customer information has been disclosed and to whom;

m.  Require Defendants to remove protected customer information from their record systems or take other remedial actions to secure the same against disclosure or misuse;

n.   Grant Plaintiffs and the Classes a trial by jury;

o.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

p.   Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.


Dated:  October 14, 2024              */s/ Rodney A. Smith*
             Rodney A. Smith, Esquire (WVSB #9750)
             **ROD SMITH LAW PLLC**
             108 1/2 Capitol Street, Suite 300
             Charleston, WV 25301
             (T) 304-342-0550
             (F) 304-344-5529
             rod@LawWV.com

             Lynn A. Toops
             Natalie A. Lyons
             **COHEN AND MALAD, LLP**
             One Indiana Square, Suite 1400
             Indianapolis, IN 46204
             Phone: (317) 636-6481
             ltoops@cohenandmalad.com
             nlyons@cohenandmalad.com

J. Gerard Stranch, IV
Michael Iadevaia
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Matthew D. Alison*
**INDIAN & ENVIRONMENTAL LAW GROUP, PLLC**
233 S. Detroit Ave. Ste 200
Tulsa, OK 74120
Phone: (918) 347-6169
matthew@iaelaw.com


Samuel J. Strauss*
**STRAUSS BORRELLI PLLC**
908 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Phone: (872) 263-1100
sam@straussborrelli.com

* To seek admission *pro hac vice*

***Counsel for Plaintiffs and the Proposed Classes***

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

JEANNIE CLARK, AMANDA
CONGLETON and TOM ELLIS,
individually and on behalf of all others
similarly situated,

   Plaintiffs,

  v.

APPALACHIAN POWER COMPANY,

AMERICAN ELECTRIC POWER
COMPANY, INC.,

and

HOMESERVE USA REPAIR
MANAGEMENT CORP.,

   Defendants.

Civil Action No. 2:24-cv-00424

**FIRST AMENDED CLASS ACTION
COMPLAINT**

**JURY DEMAND**

## CERTIFICATE OF SERVICE

  The undersigned, counsel of record for Plaintiffs, does hereby certify on this 14th day of October 2024, that a true copy of the foregoing ***Notice of Plaintiffs' Filing of First Amended Complaint and First Amended Complaint*** were served upon the defendant through the Court's Electronic Case Filing (ECF) system and by depositing the same to them in the U.S. Mail, postage prepaid, sealed in an envelope, and addressed as follows:

Ronda L. Harvey
Steptoe & Johnson PLLC
Chase Tower – 17th Floor
707 Virginia Street, East
Charleston, West Virginia 25301
Ronda.Harvey@steptoe-johnson.com

James A. King
Porter Wright Morris & Arthur LLP
41 S High Street
Columbus, OH 43215
jking@porterwright.com

John M. McIntyre
Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222
JMcIntyre@porterwright.com

*Counsel for Defendants American Electric Power
Company, Inc. and Appalachian Power Company*

Carte P. Goodwin
Joseph M. Ward
Frost Brown Todd
500 Virginia Street, East, Unit 1100
Charleston, WV 25301
cgoodwin@fbtlaw.com
jward@fbtlaw.com

*Counsel for Defendant HomeServe USA
Repair Management Corp.*

*/s/ Rodney A. Smith*
Rodney A. Smith (WVSB # 9750)
**ROD SMITH LAW PLLC**
108 ½ Capitol Street, Suite 300
Charleston, WV 25301
(T) 304-342-0550
(F) 304-344-5529
rod@LawWV.com

Lynn A. Toops
Natalie A. Lyons
**COHEN AND MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
ltoops@cohenandmalad.com
nlyons@cohenandmalad.com

4

J. Gerard Stranch, IV
Michael Iadevaia
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Matthew D. Alison*
**INDIAN & ENVIRONMENTAL LAW GROUP, PLLC**
233 S. Detroit Ave. Ste 200
Tulsa, OK 74120
Phone: (918) 347-6169
matthew@iaelaw.com

Samuel J. Strauss*
**STRAUSS BORRELLI PLLC**
908 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Phone: (872) 263-1100
sam@straussborrelli.com

* To seek admission *pro hac vice*

***Counsel for Plaintiffs and the Proposed Classes***