IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEANNIE CLARK, et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:24-cv-00424

APPALACHIAN POWER COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *HomeServe USA Repair Management Corp.'s Renewed Motion to Compel Plaintiffs Clark and Congleton to Arbitrate and to Stay Proceedings* (Document 41) and *Memorandum of Law in Support* (Document 42), the *Plaintiffs' Response to Defendant HomeServe USA Repair Management Corp.'s Renewed Motion to Compel Arbitration* (Document 58), and *HomeServe USA Repair Management Corp.'s Reply in Support of its Renewed Motion to Compel Plaintiffs Clark and Congleton to Arbitrate and Stay Proceedings* (Document 73), as well as all attached exhibits. For the reasons stated herein, the Court finds that the arbitration clause is enforceable and that a stay of the litigation is appropriate.

**FACTUAL ALLEGATIONS**

The Plaintiffs, Jeannie Clark, Amanda Congleton, and Tom Ellis, on behalf of themselves and a class of similarly-situated individuals, initiated this action with a *Complaint* (Document 1-1) filed in the Circuit Court of Kanawha County, West Virginia, on July 15, 2024. The Defendants removed the action to this Court on August 15, 2024.

Defendants American Electric Power Company ("AEP") and Appalachian Power Company ("APC") provide electricity to West Virginia consumers' homes. As electricity providers, AEP and APC have access to and retain customers' personally identifiable information ("PII"), which includes customers' home addresses, emails, bank accounts, credit card information, and electricity usage. The Plaintiffs allege that AEP and APC contracted with HomeServe USA Repair Management Corporation ("HomeServe") to send mailers to customers, using customers' PII, to promote an exterior electric line insurance coverage plan (the "Plan"). The Plaintiffs contend, however, that the Plan is "junk" because AEP and APC, not customers, are required to maintain the exterior electric lines the Plan purports to cover. (Document 1-1 at 2.)

A version of the solicitation mailer informs customers "of [their] financial responsibilities for breakdowns to the exterior electrical wiring," and states that a breakdown "may result in hundreds of dollars in personal expenses." (Document 41-1 at 5.) The mailer provides the cost of coverage and information on how to enroll. Customers can enroll by returning the Acceptance Form included in the mailer or by visiting a website provided on the Form. Customers who enroll are billed monthly on their electric bill, and coverage renews each year until a customer cancels. The mailer also contains both the HomeServe and APC logos.

All three named Plaintiffs have been AEP and APC customers for several years. Ms. Clark received several HomeServe mailers about the Plan and has subscribed for multiple years.[1] Ms. Congleton[2] also received the mailers about the Plan and subscribed for over a year before cancelling her coverage. Mr. Ellis received several mailers, but never enrolled in the Plan.

---

1  Ms. Clark's late husband, Donald Clark, initially enrolled in the Plan. Ms. Clark continued to subscribe to the Plan after his death.
2  Ms. Congleton's former last name was Tabor and appears as such on several of the relevant exhibits.

The mailer's Acceptance Form states that "[b]y providing my email address, I request that I be notified when my current and future service agreements and any documents related to this coverage are available at www.MyHomeServeUSA.com, and I acknowledge that I can access these documents" and "I . . . have read the information in this package and understand that there are limitations and exclusions."  (Document 58 at 6.)  Both Ms. Clark's late husband and Ms. Congleton signed these Acceptance Forms and provided their email addresses.  Ms. Clark and Ms. Congleton subsequently received Service Agreements from HomeServe, which provided the terms and conditions of the Plan.  At least thirty days before a customer's coverage under the Plan was scheduled to renew, a renewal notice and new Service Agreement was sent.

The Plaintiffs and the identified classes assert claims of negligence, civil conspiracy, tortious interference, breach of contract, unjust enrichment, and a violation of the West Virginia Unfair Trade Practices Act against the Defendants.  HomeServe now moves to compel arbitration, citing the arbitration portion of the Service Agreement,[3] which provides:

> **YOU, [THE SERVICE AGREEMENT OBLIGOR] AND HOMESERVE ALL AGREE TO RESOLVE DISPUTES BY BINDING ARBITRATION as follows:**
> A. **ANY DISPUTE THAT ARISES OUT OF OR RELATES TO THIS SERVICE AGREEMENT OR FROM ANY OTHER AGREEMENT BETWEEN US, OR SERVICES OR BENEFITS YOU RECEIVE OR CLAIM TO BE OWED FROM [HOMESERVE'S SERVICE PROVIDER] OR HOMESERVE, WILL BE RESOLVED BY ARBITRATION ON AN INDIVIDUAL BASIS.**  This arbitration agreement applies to disputes no matter when they arose, including claims that arose before You and We entered into this Service Agreement. [. . .]  The American Arbitration Association ("AAA") will administer the arbitration under its Consumer Arbitration Rules.  The Federal Arbitration Act applies.  Unless You and We agree otherwise, any arbitration hearings will take place in the county where Your Home is located.
> B.  . . .

---

[3] The arbitration provision in the Service Agreement has changed minimally during the years the Plaintiffs have been enrolled in the Plan.  The most recent arbitration provision is cited here.

    C. **THIS ARBITRATION AGREEMENT DOES NOT PERMIT CLASS ACTIONS AND CLASS ARBITRATIONS.** By entering into this Service Agreement, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action. **THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.** You may bring a claim only on Your own behalf and cannot seek relief that would affect other parties.

    D. . . .

    E. **BY AGREEING TO ARBITRATION, YOU ARE WAIVING YOUR RIGHT TO PROCEED IN COURT.**

(Document 41-5 at 5, 41-11 at 5.) HomeServe contends that this arbitration provision, contained in the Service Agreement, requires arbitration of Plaintiffs Clark and Congleton's claims and that the Court should stay the entire action pending arbitration.

## APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (internal citation omitted). Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998).

A district court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted). To challenge the validity of an arbitration clause within a contract a party must specifically challenge the arbitration clause, rather than the contract as a whole. *See Buckeye Check Cashing, Inc v. Cardegna,* 546 U.S. 440, 445 (2006). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).

## DISCUSSION

Defendant HomeServe argues that Plaintiffs Clark and Congleton have agreed to arbitrate their claims pursuant to the arbitration provision included in their respective Service Agreements. Further, HomeServe argues that a stay of the entire litigation is warranted pending the outcome of arbitration. The Plaintiffs argue that they did not agree to arbitration directly or by their conduct

and, therefore, arbitration of their claims is not required, and regardless, the entire action should not be stayed.

### A. Arbitration of Ms. Clark and Ms. Congleton's Claims

HomeServe contends that the FAA requires enforcement of the arbitration provision because there is an enforceable contract with an arbitration provision therein, the arbitration provision covers the scope of the Plaintiffs' claims, the parties' transaction is related to interstate commerce, and the Plaintiffs failed to arbitrate their claims. In support of its argument, HomeServe states that the mailers sent to the Plaintiffs induced them to enroll in the Service Agreement and argues that the Plaintiffs admitted as such in the Complaint. (Document 42 at 8–9) (citing *Compl.* at ¶¶ 105, 128).[4] HomeServe argues that there is no dispute that Plaintiffs Clark and Congleton accepted the terms of the Service Agreement, which contains the arbitration provision. Specifically, HomeServe states that Ms. Clark assented to the Service Agreement by continuing to pay for the Plan's coverage, and Ms. Congleton assented to the Service Agreement by returning an executed Acceptance Form, wherein she acknowledged the ability to access "current and future service agreements and any documents related to" the Plan's coverage. (*Id.* at 10–11). HomeServe argues that these actions create a unilateral contract under West Virginia law.

In response, the Plaintiffs argue that they never received proper notice of the arbitration provision, that they did not agree to the arbitration provision, and that HomeServe failed to offer evidence showing the Plaintiffs received the updated terms of the Service Agreement before each

---

4 Paragraph 105 of the Complaint discusses the Defendants' "negligent and deceptive solicitations" and state that these solicitations resulted in West Virginia residents losing money and time. (Document 1-1). Paragraph 128 of the Complaint incorporates the preceding allegations of the Complaint by reference. (*Id.*).

renewal. The Plaintiffs contend that an agreement to arbitrate was not formed because the Acceptance Form makes no mention of the Service Agreement, resulting in the failure to incorporate both the Service Agreement and the arbitration provision therein. The Plaintiffs state that this failure to incorporate precludes mutual assent to the agreement to arbitrate. Furthermore, the Plaintiffs argue that continuing to pay for the Plan did not result in their assent to the Service Agreement. Because the Service Agreement was never incorporated into the Acceptance Form, as stated by the Plaintiffs, it is immaterial whether subsequent Service Agreements were sent to the Plaintiffs for renewal. By renewing their Plan subscriptions, the Plaintiffs state they assented only to the terms in the document they originally signed, the Acceptance Form, but never agreed to be bound by the Service Agreement terms.

In reply, HomeServe argues that the Acceptance Form is not the controlling contract between the parties, but that a contract was formed after Ms. Clark and Ms. Congleton received the Service Agreements and subsequently began paying for coverage under the Plan. Regardless, HomeServe contends that Ms. Clark and Ms. Congleton admitted in the Complaint that they entered into the Service Agreement, and that they cannot use artful pleading now to avoid the arbitration provision. Regarding incorporation by reference, HomeServe states that this is a strawman argument that should be ignored.

It is clear there is a dispute between the parties, the transaction is related to interstate commerce,[5] and the Plaintiffs brought this action to litigate the dispute rather than arbitrate it.

---

5 The HomeServe mailers were sent through the United States Postal Service ("USPS") from Pennsylvania and Connecticut. The Service Agreements were also sent through the USPS or through interstate telecommunications. Further, HomeServe is a citizen of Delaware and Connecticut, while the Plaintiffs are all citizens of West Virginia.

Thus, the main issue here is whether a written agreement that contains an arbitration provision covering the dispute exists between the parties.

Although the Plaintiffs take the position that the Acceptance Form is the controlling contract between the parties and that the Service Agreement must be incorporated by reference to be effective, HomeServe concedes that the Acceptance Form is not a contract. (Document 73 at 4–5) ("[t]he authentication card, which was included in a multi-page solicitation mailer inviting Plaintiffs to purchase coverage, is not the contract."). HomeServe, instead, represents that the Acceptance Form was merely an indication of the Plaintiffs' desire to purchase coverage under the Plan. It is therefore unnecessary to address the Plaintiffs' argument on the issue of the Service Agreement being incorporated into the Acceptance Form by reference. This leaves the question of whether the Service Agreement itself, separate from the Acceptance Form, is a valid contract between the parties.

Under West Virginia law, "[t]he elements of a contract are an offer and an acceptance supported by consideration." *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556 (W. Va. 2012). "The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." *Id.* at Syl. Pt. 3. The West Virginia Supreme Court of Appeals held:

> It is elementary that mutuality of assent is an essential element of all contracts. In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied.

8

*Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450–51 (W. Va. 1993) (internal citations omitted). The Fourth Circuit explained: "While identifiable offer and acceptance are the classic mechanisms for contract formation, 'manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined.'" *Charbonnages de France v. Smith*, 597 F.2d 406, 417 (4th Cir. 1979) (quoting Restatement (Second) of Contracts, § 22(2)).

West Virginia law states that "[a] unilateral contract is established where one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise." *Citizens Telecomms. Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 150 (W. Va. 2017) (quoting *Cook v. Heck's Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986) (internal citations omitted). "[A]cceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror." *Id*. (quoting *First Nat'l Bank v. Marietta Mfg. Co.*, 153 S.E.2d 172, 176 (W. Va. 1967).

Here, it is unclear whether Plaintiffs Clark and Congleton received the Service Agreements before being charged for coverage under the Plan. While HomeServe states that the Plaintiffs received their Service Agreements after submitting their Acceptance Forms, but before they began paying for the Plan, evidence of this assertion is uncertain. HomeServe sent letters to Ms. Clark's late husband and Ms. Congleton that acknowledged their enrollment in the Plan and provided their Service Agreements, however, these letters are not dated. (Documents 41-1 at 8, 41-8 at 10). Therefore, the Court cannot determine whether the Plaintiffs' Service Agreements were sent before they began paying for the Plan and afforded adequate notice of the arbitration provisions therein.

However, the subsequent renewal letters HomeServe sent along with the Service Agreements do create a written agreement containing an arbitration provision between HomeServe and Plaintiffs Clark and Congleton.  HomeServe sent renewal letters to Donald Clark on four separate occasions, each at least 30 days before the Plan's renewal, with a Service Agreement that contained an arbitration provision.  (Document 41-1 at 14, 20, 25, 30).  Although all of these letters were addressed to Donald Clark, Ms. Clark received all but the first renewal notice with the Service Agreements.  HomeServe also sent renewal letters to Ms. Congleton on four separate occasions, each at least 30 days before the Plan's renewal, with a Service Agreement that contained an arbitration provision.  (Document 41-8 at 16, 22, 29, 34).

The Plaintiffs acknowledge their receipt of the renewal letters in their Response. (Document 58 at 7–8) ("Before each [renewal] term, Plaintiffs received a notice explaining that the new monthly fee would continue to be charged to their APC bills.").  Despite this acknowledgement, the Plaintiffs state that HomeServe has offered "zero competent evidence" showing that the Plaintiffs received the updated Service Agreement before renewal.  (*Id*. at 2).

Each Service Agreement provides information about the Plan, how to cancel, what disputes are subject to arbitration, and where to find the Plan price and term dates.  HomeServe's communication of these terms, and how to opt out of these specific terms, is an offer.  The Plaintiffs' silence and accompanying act of continuing to pay for the Plan constitutes acceptance of the Service Agreement sent with the renewal letter.  Accordingly, the Court finds that Plaintiffs Clark and Congleton formed unilateral contracts with HomeServe by continuing to pay for the Plan's coverage after receiving notice of their new Service Agreement.

The remaining question is whether Ms. Clark and Ms. Congleton's claims fall within the arbitration provision set forth in the Service Agreement. The arbitration provision requires arbitration of "**ANY DISPUTE THAT ARISES OUT OF OR RELATES TO THIS SERVICE AGREEMENT** . . .. This arbitration agreement applies to disputes no matter when they arose, including claims that arose before You and We entered into this Service Agreement." (Document 41-5 at 5, 41-11 at 5). HomeServe argues that each of Plaintiffs Clark and Congleton's claims against it fall within the arbitration provision. The Plaintiffs do not argue otherwise.

The Court finds that all of Ms. Clark and Ms. Congleton's claims against HomeServe are within the scope of the arbitration provision. Their negligence claim arises out of customers' enrollment in the Service Agreement and the alleged misrepresentation of the Plan's coverage in solicitation materials. The conspiracy claim arises from the Defendants' alleged efforts to sell Plan coverage and bind customers to the Service Agreement. The claim of HomeServe's tortious interference with the Plaintiffs' contractual rights with the utility Defendants directly relates to the Service Agreement. Any unjust enrichment realized by HomeServe arises from its Service Agreements with the Plaintiffs. Finally, the asserted West Virginia Unfair Trade Practices Act ("WVUTPA") claim arises from the Service Agreement because it concerns the insurance policy at issue. Therefore, the Court finds that the arbitration provision contained in the Service agreement is enforceable as to Plaintiffs Clark and Congleton's claims against HomeServe.

### B. Stay of the Action Pending Arbitration

HomeServe argues that under Section 3 of the FAA, district courts are to stay court proceedings pending the resolution of arbitration. HomeServe contends that not only should the Court stay Ms. Clark and Ms. Congleton's claims against it but should stay the entire proceeding.

In support of its argument, HomeServe states that there is a risk of inconsistent results if Mr. Ellis' claims are not stayed, and that arbitration will dispose of issues common to all Defendants.

In response, the Plaintiffs argue that staying the entire matter and allowing AEP and APC to benefit from an arbitration clause to which they are not parties is unwarranted. They state that Mr. Ellis' claims solely concern whether his PII was improperly shared with HomeServe by the utility Defendants. Further, they argue that because Mr. Ellis is not bound by a Service Agreement, there are no factual commonalities that present a risk to the arbitrable claims. The Plaintiffs state that Clark and Congleton's claims against the utility Defendants do not hinge on the Service Agreement, but rather on whether the utility Defendants had an independent obligation to provide the service covered by the Plan. As such, the Plaintiffs conclude that there is no factual overlap to warrant staying the entire matter. Finally, the Plaintiffs argue that a stay of litigation would prejudice them by preventing prompt consideration of their other claims.

In reply, HomeServe argues that the Plaintiffs misstate the nature of Mr. Ellis' claims because he seeks relief for the time he spent reviewing HomeServe's mailers and for HomeServe's alleged violations of the WVUTPA. HomeServe states each of these claims will require an analysis of the coverage available under the Service Agreement to determine if the mailers were misleading. Further, HomeServe contends that a factual commonality exists between the arbitrable claims and Plaintiffs Clark and Congleton's claims against the utility Defendants because it requires a review of the Plan's coverage under the Service Agreement.

Section 3 of the FAA dictates that a court presented with an issue referable to arbitration pursuant to a written agreement "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9. U.S.C. §

3; *See also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001). "Additionally, district courts have the power to stay claims against a non-arbitrating party when a case involves both arbitrating and non-arbitrating parties." *Chapman–Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, No. 2:11-cv-563, 2011 WL 5999868, at *4 (S.D.W. Va. Nov. 30, 2011) (Goodwin, J.) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983)). "The decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (citations omitted).

"Even with the court's broad discretion, however, '[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.'" *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, No. CV 3:15-14887, 2018 WL 11412001, at *1 (S.D.W. Va. Apr. 30, 2018) (Chambers, J.) (quoting *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)). In determining whether the movant has met this burden, the Court must consider three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *White v. Ally Fin. Inc.*, 969 F.Supp.2d 451, 462 (S.D.W. Va. 2013) (Goodwin, J.) (internal quotation and citation omitted).

At the center of Plaintiffs' claims is the Defendants AEP and APC's release of the Plaintiffs and class members' personal information and all Defendants' participation in deceptive solicitation of the Service Agreement for their financial benefit. This is the recurring theme throughout the Complaint in Count I (Negligence), Count II (Civil Conspiracy), Count III (Tortious Interference), Count IV (Breach of Contract), Count V (Unjust Enrichment) and Count VI (Violation of the West

Virginia Unfair Trade Practices Act). As the Complaint is written, the Plaintiffs seek relief against all Defendants as to each claim with the lone exception of Count IV (Breach of Contract). The Plaintiffs appear to seek relief against AEP and APC only in that count. Although, Plaintiff Ellis did not enter into a service plan or agreement with Defendant HomeServe, he seeks relief against all Defendants. Importantly, the claims are brought by Plaintiffs Clark, Congleton and Ellis individually and on behalf of purported class members. The Court recognizes that the claims involving Plaintiff Ellis and Defendants AEP and APC are not subject to arbitration. However, having considered the nature of the claims, the relief requested, the overlap in factual and legal determinations among the arbitrable and non-arbitrable claims and the type of action, the Court finds that a stay will promote judicial economy. A stay avoids the risk of inconsistent rulings on the same legal issues as well as the simultaneous prosecution and defense of identical issues in two separate forums. Further, although a stay will result in some delay for the Plaintiffs, they have failed to allege any specific prejudice that will result. The Court finds that a stay of the entirety of this action is warranted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *HomeServe USA Repair Management Corp.'s Renewed Motion to Compel Plaintiffs Clark and Congleton to Arbitrate and to Stay Proceedings* (Document 41) be **GRANTED**. The Court **ORDERS** that Plaintiffs Clark and Congleton's claims be **REFERRED** to arbitration in accordance with the terms of the Service Agreement and the Federal Arbitration Act. Finally, the Court **ORDERS** that this action be **STAYED** pending resolution of arbitration and **REMOVED** from the Court's active docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

                        ENTER:      February 24, 2025

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA